UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL PIKE,

                Plaintiff,

v.                                                                                  **23-CV-583-A**
                                                                       **DECISION AND ORDER**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.
_____

## I.    INTRODUCTION

The Plaintiff Daniel Pike, brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking judicial review of the Commissioner's determination denying Plaintiff Supplemental Security Income (SSI) under the Social Security Act. Plaintiff (Dkt. No. 4) and the Commissioner (Dkt. No. 5) have filed cross-motions for judgment on the pleadings. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

### A.  Factual Background and Procedural History

Plaintiff was born in 1973, and on November 7, 2020, he filed an application for SSI alleging disability beginning on September 26, 2020, his date of last work. (Dkt. No. 3, p. 217).  A high school graduate, Plaintiff previously worked as a contractor and forklift operator. (Dkt. No. 3, pp. 221-222).  His claim for disability was

based on the following conditions: back issues and injuries; difficulty sitting and standing for long times; neck issues and injuries; difficulty looking up and down; shoulder issues and injuries; damaged knees; and arthritis. (Dkt. No. 3, p. 220).

Plaintiff's application for SSI was initially denied on April 14, 2021 (Dkt. No. 3, p. 98), and upon reconsideration on June 7, 2021. (Dkt. No. 3, p. 111). Plaintiff requested a hearing before an Administrative Law Judge ("the ALJ"), and on July 21, 2022, Plaintiff and his attorney appeared telephonically before ALJ Thomas Merrill and testified (Dkt. No. 3, pp. 45-55), as did a vocational expert. (Dkt. No. 3, pp. 55-59). On September 21, 2022, the ALJ rendered a written decision finding that Plaintiff was not disabled under the SSA. (Dkt. No. 3, pp. 18-34). On April 20, 2023, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Dkt. No. 3, p. 5).

**B. The ALJ's Decision**

The ALJ determined, under step one, that Plaintiff had not engaged in substantial gainful activity since September 26, 2020, the alleged onset date. (Dkt. No. 3, p. 23). Under step two, the ALJ determined that Plaintiff had the following severe impairments: mild degenerative disc disease of the lumber spine and mild AC joint space (shoulder) arthrosis. (Dkt. No. 3, p. 24). At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526. (Dkt. No. 3, p. 25). The ALJ next determined that Plaintiff had the residual function capacity (RFC) to perform the full range of

light work as defined in 20 CFR 404.1567(b). (Dkt. No. 3, pp. 25-33).  At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a forklift operator and roofer. (Dkt. No. 3, p. 33).  At step five, the ALJ determined, based upon the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, that the Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy, including as a messenger, cleaner, and cafeteria attendant. (Dkt. No. 3, p. 34).  On that basis, the ALJ determined that Plaintiff was "not disabled." (Dkt. No. 3, p. 34).

### C. The Parties' Contentions

In seeking this Court's review of the ALJ's determination, Plaintiff argues the ALJ failed properly to evaluate the opinions of treatment providers Dr. Wilcox and Physician Assistant (PA) Hank.  Specifically, Plaintiff claims that the ALJ failed to "consider these opinions together and how they are consistent with one another." (Dkt. No. 4-1, p. 9). Plaintiff further asserts that the ALJ failed to consider "Plaintiff's long treatment relationships with Dr. Wilcox and PA Hank and inappropriately pitted their opinions against the opinions of the State Agency Review Physicians."  (Dkt. No. 4-1, p. 9). "Given these errors," Plaintiff asserts that the "decision is not supported by substantial evidence," and thus, "a remand is required." (Dkt. No. 4-1, p. 9).  Defendant responds that the ALJ committed no error, that the decision is supported by substantial evidence, and that, therefore, the ALJ's decision should be affirmed.  (Dkt. No. 5-1, pp. 4-17).

### II.   LEGAL STANDARD

3

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the

4

claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

### B. Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III.   ANALYSIS

#### A. The ALJ's Decision Did Not Err in Assessing the Opinions of Dr. Wilcox and PA Hank and Is Supported By Substantial Evidence

Plaintiff asserts that the ALJ erred in failing properly to assess the opinions of Dr. Wilcox and PA Hank—both of whom had some treatment history with Plaintiff, and consequently, his decision is not supported by substantial evidence. (Dkt. No. 4-1, pp. 9-16).  Review of the opinions of both Dr. Wilcox (Dkt. No. 3, pp. 450-454) and PA Hank (Dkt. No. 3, pp. 558-562) reveals however that the opinions are not that consistent.  Moreover, the ALJ appropriately considered such opinions in the context of the totality of evidence before him and his conclusions regarding Plaintiff's condition, and Plaintiff's capacity to perform the requirements of the RFC are supported by substantial evidence.

#### 1. Dr. Wilcox

Dr. Wilcox, Plaintiff's chiropractor, who treated Plaintiff for 15 minutes, once monthly (Dkt. No. 3, p. 450), opined that Plaintiff's pain would interfere with his attention and concentration between 20-99% of the workday. *Id.*, at 451. He

indicated that Plaintiff had mid-thoracic and lower back pain that never goes away but that is increased with lifting. *Id.*, at 450. He opined that Plaintiff, who did not appear stressed and was capable of high-stress work, could walk up to ten city blocks without rest or pain, that he could sit for two hours at a time and for two hours total in a day, and stand for one hour at a time and for two hours total in a day. *Id.*, at 450-451. He further found Plaintiff would need to walk for ten minutes every 90 minutes, would need to shift positions at will, and would need to take one unscheduled break per day, for ten minutes. *Id.*, at 452. He found Plaintiff could frequently carry less than ten pounds, occasionally carry ten pounds, and never carry 50 pounds. *Id.* Dr. Wilcox found Plaintiff could frequently turn his head in all directions and could occasionally twist, crouch/squat, or climb stairs, but rarely stoop or climb ladders. *Id.*, at 453. He did not assess any limitations in reaching, handling, or fingering. *Id*. He found on average Plaintiff would likely be absent from work about four days per month. *Id*.

### 2. PA Hank

PA Hank, who has treated Plaintiff since 2012, *id.,* at 558, only saw Plaintiff twice during the relevant period. *Id.*, at 456, 459, and during the second of those visits, in October of 2021, Plaintiff declined additional imaging and referrals to pain management or a surgeon. *Id.*, at 459. Like Dr. Wilcox, PA Hank opined that Plaintiff's pain would interfere with his attention and concentration for 20-99% of the workday and cause excessive absences. *Id.*, at 559, 561. Dr. Wilcox and PA Hank also assessed somewhat similar tolerances for standing and walking. *Compare*, *Id.*,

at 450-452 *with Id.*, at 559-561.  For the most part, however, the similarities between the two opinions ended there. While PA Hank found Plaintiff capable of only low-stress jobs, Dr. Wilcox found he would be capable of high-stress jobs. *Compare*, *Id.*, at 451, 559. PA Hank found Plaintiff could sit for only 45 minutes at a time, while Dr. Wilcox found he could sit for up to two hours at a time. *Compare*, *Id.*, at 451, 559. PA Hank did not attempt to assess Plaintiff's tolerance for lifting and/or carrying and found Plaintiff could rarely turn his head in any direction, *id.*, at 561, while Dr. Wilcox did assess lifting/carrying tolerances, and found Plaintiff could frequently turn his head in all directions. *Id.*, at 453. PA Hank assessed highly restrictive manipulative limitations, *id.*, yet Dr. Wilcox did not find any manipulative limitations whatsoever.  In sum, a point-by-point comparison of the two opinions reveals more contradictions than consistencies.

### 3.  The Other Evidence

The ALJ noted that the medical imaging studies of Plaintiff's lumbar, cervical, and thoracic spine, from 2015 and 2021, and of his right shoulder, in 2021, generally showed only mild and mild-to-moderate abnormalities. (Dkt. No. 3, pp. 27-29 [citing *id.*, at 392, 393, 408, 414-416, 519, 521, 523]). The ALJ also acknowledged the physical examination findings documented by Plaintiff's primary PA, PA Hank, who found that Plaintiff had tenderness and diffuse spasms in the neck with a limited range of motion, while also finding that Plaintiff had full muscle strength and full range of motion in the right shoulder. (Dkt. No. 3, p. 32 [citing *id.*, at 459, 462]).

The ALJ also detailed the examination findings made by the internist consultative examiner, Dr. John Schwab, in March 2021.  (Dkt. No. 3, p. 30 [citing *id.*, at 388-391]). The ALJ specifically noted Dr. Schwab's findings of a normal gait and stance, no difficulty walking on heels or toes, squatting to 80%, a normal stance, no use of assistive device, negative straight leg raising, normal strength and sensation, normal reflexes, and a full range of motion in the lumbar and cervical spine but somewhat limited range of motion in the shoulders. *Id*. Plaintiff had no sensory deficits, 5/5 strength in upper and lower extremities, no muscle atrophy, 5/5 grip strength and intact hand and finger dexterity. Dr. Schwab determined that x-rays he performed on Plaintiff showed mild AC joint arthrosis in the right shoulder, and mild-to-moderate degenerative changes in the spine. *Id*.  The ALJ recognized that Plaintiff had undergone some treatment for his complaints but noted that this treatment had been solely conservative in nature, consisting of physical therapy and chiropractic treatments. (Dkt. No. 3, p. 29 [citing *id.*, at 357-386, 426-448, 458-463]).

In addition to the medical evidence, the ALJ also acknowledged Plaintiff's daily activities as reported in his Function Report, including preparing his own meals, doing laundry and cleaning, mowing the lawn, going out alone, driving, and shopping in stores for personal and household items, while acknowledging that this differed somewhat from Plaintiff's testimony at the hearing. (Dkt. No. 3, p. 26 [citing *id.*, at 47-50, 283-290]).  The ALJ noted that Plaintiff was able to cook seven days per week, do laundry twice per week, shop once per month, and shower and dress daily during his evaluation with Dr. Schwab.  (Dkt. No. 3, p. 28 [citing *id.*, at 388]).

Plaintiff was also treated at Nunda Health Center on September 13, 2021. (Dkt. No. 3, p. 28). Notwithstanding Plaintiff's complaints of ongoing pain and tenderness, Plaintiff had 5/5 strength in the upper extremities with intact sensation, full range of motion of the shoulder, reporting pain with shoulder abduction. *Id*. X-rays showed no acute fracture or dislocation and a cervical spine x-ray showed partially bridging osteophytes anteriorly at C4-5 and C5-6 but with intact facet joints, no neuroforaminal stenosis, no instability with flexion and extension, and no acute findings. *Id*.

Regarding opinion evidence, the ALJ found the assessments of the State agency consultants, Gregory Zito, M.D. and J. Koenig, M.D., persuasive. (Dkt. No. 3, pp. 30-31 [citing *id.*, at 68-74, 84-88]). Both consultants found Plaintiff capable of light work—able to lift 20 pounds occasionally and 10 pounds frequently and stand/sit about 6 hours each in any given workday (*id*. at 72, 85-86)—with no more than occasional overhead reaching. *Id*. The ALJ found the limitation to light work was well-supported by the consultants' citations to the medical evidence but found Dr. Zito's and Dr. Koenig's assessed limitations for overhead reaching were inconsistent with other medical evidence, including NP Hanks' findings of a normal shoulder range of motion. (Dkt. No. 3, pp. 30-31 [citing *id.*, at 459, 463]). The ALJ also found Dr. Schwab's opinion of moderate restrictions with raising the arms over shoulder height and lifting weights unpersuasive, noting that Dr. Schwab's finding of a limited range of motion in the shoulders was not consistent with other examination findings in the record. (Dkt. No. 3, p. 30 [citing *id.*, at 389-390, 459, 462]). In

addition, the ALJ also found PA Hank's opinion unpersuasive, finding that it appeared to overstate Plaintiff's limitations. (Dkt. No. 3, pp. 32-33 [citing *id.*, at 558-562]) and similarly found the opinion of Plaintiff's chiropractor, Donald Wilcox, D.C., largely unpersuasive, although he agreed with some aspects of it. (Dkt. No. 3, pp. 31-32 [citing *id.*, at 450-454]).

While the ALJ found that Plaintiff's medical impairments could reasonably be expected to cause the symptoms exhibited by Plaintiff, the ALJ determined that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Dkt. No. 3, p. 29).

In sum, the ALJ considered the medical imaging, the examination findings, Plaintiff's own reporting, the conservative treatment with refusal of more specialized work-up and treatment, as well as the assessments of the State agency consultants to arrive at the conclusion that Plaintiff could perform the requirements of the RFC and thus not disabled.

### B. The ALJ's Assessment of The Evidence Was Proper

Under the SSA' new regulations, ALJs are required to evaluate medical opinions and findings based on factors including, among others: (1) their supportability (i.e., the extent to which a source explains his or her opinion, and supports it with objective medical evidence); (2) consistency (i.e., the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3)

the source's relationship with the claimant (including the length of the relationship and frequency of visits), and (4) the source's specialization (i.e., education and training). 20 C.F.R. § 404.1520c(c).

The first two factors above — supportability and consistency — are the "most important factors"; accordingly, the ALJ is generally required to explain his consideration of them. *Id*. § 404.1520c(b)(2). The regulation does not require the ALJ to explain his consideration of the remaining factors. *Id*. "These are not especially formalistic requirements." *Davis v. Comm'r of Soc. Sec.*, No. 20-CV-4282(EK), 2024 WL 278425, at *2 (E.D.N.Y. Jan. 25, 2024). Indeed, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ is not required to address every medical opinion from the same source and need only provide a "single analysis," which is precisely what the ALJ did here regarding each medical source. *See*, *Allisa P. v. Commissioner of Social Security*, No. 1:21-CV-556-DB, 2024 WL 278227, at *9 (W.D.N.Y. Jan. 25, 2024). The ALJ "does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Although required to develop the record fully and fairly, an ALJ is not required to discuss each piece of evidence. *Id*. In addition, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

In the end, "[d]etermining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional." *Allisa P. v. Commissioner of Social Security*, No. 1:21-CV-556-DB, 2024 WL 278227, at *7. Genuine conflicts in the medical evidence are for the Commissioner to resolve. *See, e.g.*, *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). In fact, "an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record." *Allisa P. v. Commissioner of Social Security*, No. 1:21-CV-556-DB, 2024 WL 278227, at *8.

Since, as noted above, Plaintiff's contention that the ALJ did not meaningfully consider the consistency and supportability of Dr. Wilcox's and PA Hank's opinions is without basis in the record, and since the ALJ expressly considered whether such opinions were supported by their own records and "whether they were consistent with the other medical evidence of record[,] [t]he Court finds no basis to disturb the Commissioner's determination." *Kenneth S. v. Comm'r of Soc. Sec.*, No. 6:21-CV-06391 EAW, 2023 WL 1960218, at *4 (W.D.N.Y. Feb. 13, 2023). "[T]o the extent that the ALJ did not credit every single aspect of [the doctors'] opinions, the rejected portions were not supported by the medical evidence of record, and her decision rejecting them did not lack substantial evidence." *Burkey v. Colvin*, 284 F. Supp. 3d 420, 425 (W.D.N.Y. 2018); *see Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject

[the doctors'] opinions; instead, she afforded them 'partial' and 'some' weight and ... relied on portions of them to determine [claimant's] RFC[;] ... [j]ust because the ALJ did not afford either [doctor's] opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions").

In the end, that Plaintiff may disagree with the way the ALJ weighed the evidence provides no basis for this Court to disturb the ALJ's conclusion. *Shamara A. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6171-LJV, 2023 WL 9002810, at *3 (W.D.N.Y. Dec. 28, 2023). Plaintiff has failed to cite to any specific evidence which Plaintiff asserts the ALJ failed to consider, but instead argues that the ALJ failed to give appropriate weight to the evidence that arguably supported Plaintiff's position. Contrary to assertion that the ALJ "cherry-picked" evidence in this case, this Court concludes that the ALJ appropriately determined that notwithstanding certain symptoms complained of by Plaintiff, the medical evidence and other evidence presented at the hearing were inconsistent with the intensity, persistence, and limiting effects of those symptoms. *See Matta v. Astrue*, 508 F. App'x 53, 56-57 (2d Cir. 2013) (summary order) (holding that ALJ did not engage in cherry-picking where there was evidence that claimant had severely fluctuating symptoms, but substantial evidence supported ALJ's conclusion that claimant could work with proper treatment).

Under the substantial evidence standard of review, Plaintiff must show that the ALJ's findings of fact were so inconsistent with the medical record that "a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*

14

*Comm'r*, 683 F. 3d 443, 448 (2d Cir. 2012); *McIntyre v. Colvin*, 758 F. 3d 146, 149 (2d Cir. 2014). Plaintiff has not met that burden. Notwithstanding Plaintiff's disagreement with the ALJ's weighing of the evidence, the deferential standard of review which applies here "prevents [this Court] from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016).

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 4) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. No. 5) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

                            *s/Richard J. Arcara*
                            HONORABLE RICHARD J. ARCARA
                            UNITED STATES DISTRICT COURT

Dated:  February 12, 2024
         Buffalo, New York